IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY LOU KUZDROWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-0991 |
| | ) | Judge Joy Flowers Conti |
| R. JAMES NICHOLSON | ) | |
| Secretary of the Department | ) | |
| of Veterans Affairs | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

CONTI, District Judge

In this memorandum order, the court considers the motion for summary judgment (Doc. No. 26) filed by defendant R. James Nicholson, Secretary of the Department of Veterans Affairs ("defendant"), with respect to the claims asserted by plaintiff Mary Lou Kuzdrowski ("plaintiff") under section 633a of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. Plaintiff asserts two kinds of claims against defendant: an age discrimination claim for failure to promote and retaliation claims. After considering the joint statement of material facts, the motions and the briefs submitted by the parties, the court will grant defendant's motion. With respect to the claim asserted by plaintiff under section 633a of the ADEA for failure to promote the court concludes, after resolving all factual doubts in plaintiff's favor and drawing all reasonable inferences in her favor, that plaintiff cannot establish a prima facie case. With respect to plaintiff's retaliation claims under section 633a, the court concludes that Congress did not explicitly waive sovereign immunity with respect to retaliation claims under the ADEA and the

court does not have jurisdiction to hear retaliation claims against the Department of Veterans Affairs (the "VA"), a federal agency.

*Factual Background*

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Plaintiff was born on December 1, 1950. Joint Statement of Material Facts ("J.S.") ¶1. She graduated from St. Francis School of Nursing in 1971. Id. ¶2. She received a bachelor of science degree in recreation from Slippery Rock University in 1991. Id. ¶3. Plaintiff did not obtain her bachelor of science in nursing "due to personal reasons and circumstances." Id. ¶12. She is aware that the VA would have paid for her return to college to obtain the degree had she desired to do so. Id. ¶13

There are four levels of Nurses – Nurse I, II, III and IV – at the Butler VA Medical Center (the "Butler VA"). Id. ¶4. Nurse levels I - III are not tied to a nurse's job title. Id. ¶5. Promotion to a higher level of nursing within levels I - III does not affect the nurse's job title. Id. ¶5. Plaintiff's job title at the Butler VA during the time period relevant to this lawsuit was staff nurse in the acute care unit. Id. ¶6.

Shelly Divers was considered for promotion from Nurse II to Nurse III in September 2001. Id. ¶21. She was born in April 1953. Id. ¶21. Nancy Culley was considered for promotion from Nurse II to Nurse III in September 2001. Id. ¶22. She was born in December 1952. Id. ¶22. Bonnie Warren (Raybuck) was considered for promotion from Nurse II to Nurse III in February

2002. Id. ¶23. All three were promoted. When nurses Divers, Culley and Warren (Raybuck) were promoted, medical center director Mike Finnegan or his associate director Rick Cotter had final authority for promotion decisions. Id. ¶24.

On January 17, 2003, a primary care/outpatient registered nurse vacancy at the Butler VA was posted in announcement 2003-14, which was the only primary care/outpatient registered nurse vacancy at the Butler VA during 2003. Id. ¶ 41. Recruitment announcement 2003-14 was open on January 17, 2003 and had a closing date of January 27, 2003. Id. ¶ 45. The announcement stated:

> current VA employees of this facility may apply by submitting VAF 4078, Application for Promotion or Reassignment to Human Resources. This form may be obtained from your primary clerical support or Human Resources and must be received in Human Resources (31) by the close of business on the closing date of this announcement.

Id. ¶ 45. As a current VA employee at the time, plaintiff had the obligation to apply using this procedure between while the position she desired was open. Id. ¶ 46. She did not submit an application for announcement number 2003-14 between January 17, 2003 and January 27, 2003. Id. ¶ 47. Plaintiff was on leave during that period. Id. The successful candidate, however, did not apply for that position until May 2003. Id.

In late summer or early fall 2003, the Nurse Professional Standards Board (the "Board") at the Butler VA considered plaintiff for a non-competitive promotion to Nurse Level III. Id. ¶8. At the time, plaintiff was approximately fifty-two years old. Id. ¶17. The members of the Board who considered plaintiff for promotion were Marcia Schoeffel, Gloria Wenzel, and Carol Niggel. Id. ¶9. Following the meeting of the Board, the acting director of the Butler VA, Terry Gerigk, made a final determination regarding plaintiff's promotion. Id. ¶10. Sixteen nurses, including

plaintiff and eleven nurses who were younger than plaintiff, were considered for promotion to Nurse III during 2003.  Id. ¶15.  The nurses ranged in age from approximately 30 years old to approximately 63 years old.  Id. ¶16.  None of the sixteen nurses were promoted in 2003 to Nurse III, including plaintiff and the eleven nurses who were younger than plaintiff.  Id. ¶¶ 18, 19.

On August 25, 2003, plaintiff made initial contact with the ORM (Office of Resolution Management) with respect to discrimination against her on the basis of reprisal and age discrimination when the Butler VA refused to promote her to Nurse III.  Id. ¶ 70.

Plaintiff submitted to Sandra McCarthy, by memorandum dated September 10, 2003, a request to be transferred to the outpatient department of the Butler VA.  Id. ¶ 38.  In this memorandum, plaintiff stated that she was "requesting an outpatient position when any one of them becomes available."  Id. ¶ 39.  At the time, there were no vacant positions at the Butler VA accepting applications for primary care/outpatient registered nurses; however, the vacancy announced in January 2003 was not filled until after plaintiff's request was submitted.  Id. ¶ 40.  Plaintiff was aware that there was no specific vacancy announcement posted in the primary care/outpatient department at the time she submitted her request.  Id. ¶ 42.  On September 16, 2003, the Butler VA replied to plaintiff's memorandum in writing.  Id. ¶ 43.  In its response, the Butler VA explained that it does not keep requests for potential future vacancies on file and that plaintiff must apply for specific vacancies when they are announced.  Id. ¶ 44.

On September 29, 2003, plaintiff filed an EEO Formal Complaint for Discrimination for Charge 200H-0529-2003104159, which was her first formal EEO complaint.  Id. ¶¶ 34, 70.  In the complaint plaintiff alleged she was discriminated against on the basis of reprisal and age discrimination when the Butler VA refused to promote her to Nurse III.  Id. ¶ 70.  The complaint

4

confirms that the NLRB activity in which she engaged in 2002 was the basis for plaintiff's retaliation claim. Id. ¶ 33. Prior to September 29, 2003, plaintiff had not engaged in any EEO activity against the Butler VA. Id. ¶ 34. Fourteen of the sixteen nurses at the VA who were considered for promotion to Nurse III in 2003 and were not promoted had never filed an EEO complaint against the Butler VA. Id. ¶ 35.

Plaintiff received written notification dated October 21, 2003 from the Board indicating that she would not be promoted from Nurse II to Nurse III, because she "lack[ed] the education and programmatic leadership for a Nurse III." Id. ¶11. Plaintiff did not supervise any VA employees between 1994 and 2004, aside from periodically serving as a "charge nurse" which all acute care nurses engaged in on a rotating basis. Id. ¶14.

On October 27, 2003, plaintiff first contacted the ORM about a second possible EEO complaint. Id. ¶ 71. On December 16, 2003, plaintiff filed a second formal EEO complaint alleging that she was discriminated against on the basis of reprisal for prior EEO activity when she was denied reassignment. Id. ¶ 71. Plaintiff contends that Judith Wilson and Dr. McNerney subjected her to harassment from September 2003 through May 2004 in retaliation for her prior protected activity. Id. ¶ 49. Judith Wilson did not make any comments to plaintiff regarding the EEO complaints that plaintiff filed against the Butler VA. Id. ¶ 50. Plaintiff's basis for her belief that Dr. McNerney was aware of her EEO activity is that he "probably sat in" during "management""morning meetings" at the Butler VA. Id. ¶ 51. Plaintiff did not attend morning meetings at the Butler VA. Id. ¶ 53.

Plaintiff successfully obtained her Advanced Cardiac Life Support ("ACLS") certification during 2004. Id. ¶ 54. She and other nurses at the Butler VA obtained their ACLS certifications

via the computer in 2003.  Id. ¶ 55.  As supervisor, Judith Wilson's duties included being sure that only a few acute care nurses were absent from the unit on a given day to obtain their ACLS certifications.  Id. ¶ 56.

Plaintiff was not present when Judith Wilson questioned plaintiff's coworker, Naomi Day, about plaintiff's activities.  Id. ¶ 57.  Naomi Day stated that she observed the relationship between plaintiff and Judith Wilson was strained at times.  Id. ¶ 84.  Ms. Day stated that she did not know of anything plaintiff had done to Judith Wilson to bring about the strained relationship.  Id. ¶ 84.  When another employee commented that plaintiff was getting forgetful, Naomi Day responded that it is no wonder with the stress that Judith Wilson was causing plaintiff.  Id. ¶ 85.

Plaintiff was not present when Judith Wilson allegedly made comments to one of plaintiff's coworkers that plaintiff "wouldn't get [her] pension." and that plaintiff "would be suing the VA."  Id. ¶ 58.  Plaintiff did not let her supervisor, Judith Wilson, know that Ms. Wilson's criticism of plaintiff made her uncomfortable.  Id. ¶ 60.  Plaintiff did not inform any administrators to whom Judith Wilson reported that plaintiff felt she was being subjected to a hostile work environment by Judith Wilson or Dr. McNerney.  Id. ¶ 61.  Plaintiff did not inform Dr. McNerney that his conduct in May 2004 made her uncomfortable.  Id. ¶ 62.

Plaintiff received satisfactory performance evaluations throughout her employment with the Butler VA.  Id. ¶ 63.  She never informed her supervisor, Judith Wilson, that she felt her work environment had become so bad that she intended to resign.  Id. ¶ 64.  Plaintiff was never suspended or demoted during her employment at the Butler VA.  Id. ¶¶ 65, 66.  Plaintiff never had her pay cut or her benefits reduced during her employment at the Butler VA.  Id. ¶¶ 67, 68.

Plaintiff was not transferred out of the acute care unit against her will during her employment at the Butler VA.  Id. ¶ 69.

On January 28, 2004, before summoning Dr. McNerney, plaintiff did not take a patient's blood pressure.  Id. ¶29.  Plaintiff did not use a stethoscope to assess the patient's breath sounds.  Id. ¶ 30.  On January 30, 2004, Judith Wilson, completed a Report of Contact with respect to the incident that occurred on January 28, 2004.  Id. ¶31.  In the report, Ms. Wilson indicated: "[Plaintiff] stated she did not check a pulse or blood pressure but assumed [the patient's] breathing had stopped."  Id.  In the report Ms. Wilson also stated that plaintiff and she had discussed "the importance of accurate assessment [of a patient] including pulse check, blood pressure and apical pulse prior to determining death."  Id.  Plaintiff did not receive any written reprimand from her supervisor, Judith Wilson during January or February 2004.  Id. ¶25.  Under VA policies, neither a Report of Contact (VA form 119) nor an Incident Report (VA Form 10-266) constitutes "discipline" to an employee.  Id. ¶26.  Plaintiff's official personnel file does not contain either a Report of Contact or an Incident Report. Id. ¶27.  Plaintiff's official personnel file does not contain any written discipline relating to her encounter with a VA physician on or about January 28, 2004.  Id. ¶28.

### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  A motion for summary judgment will not be defeated by the

mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.  Anderson, 477 U.S. at 247-48.  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 249.  In determining whether to grant summary judgment, the court is to resolve "all factual doubts" and to draw "all reasonable inferences in favor of the nonmoving party."  The Regents of the Mercersburg College v. Republic Franklin Ins. Co. 458 F. 3d 159 (3d Cir. 2006).

The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); Pollack v. City of Newark, 147 F.Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert.denied, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or *otherwise made admissible in evidence*") (emphasis added).

### *Discussion*

**I. Claim asserted under section 633a of the ADEA for failure to promote**

Plaintiff in her first claim alleges that the Butler VA hospital discriminated against her on the basis of age in violation of section 633a of the ADEA when the Butler VA failed to promote her from Nurse II to Nurse III in the late summer of 2003.  Age discrimination against a person over the age of forty by an agency of the federal government is prohibited by section 633a of the ADEA which provides in relevant part: "All personnel actions [by an agency of the federal

government] affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."

Plaintiff adduced no direct evidence of age discrimination. In cases where there is no direct evidence of discrimination, the United States Court of Appeals for the Third Circuit applies the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Barber v. CSX Distribution Services, 68 F.3d 694 (3d Cir. 1995). Under this analysis, a plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Once a prima facie case has been established, the burden of production – but not the burden of persuasion – shifts to the employer. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Simpson v. Kay Jewelers, 142 F.3d 639, 644 n.5 (3d Cir. 1998). At this point the employer must produce some evidence of a nondiscriminatory reason for its actions. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). If evidence of a nondiscriminatory reason is produced, a plaintiff may survive summary judgment by producing evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764.

In this case defendant argues that plaintiff cannot establish a prima facie case of discrimination for failure to promote plaintiff. A failure to promote claim is analogous to a claim of failure to hire. Barber, 68 F.3d at 698. In order to establish a prima facie case for failure to hire or promote, a plaintiff

> must show "that 1) [she] belongs to the protected class, 2) that [she] applied for and was qualified for the job, 3) that despite [her] qualifications [she] was rejected, and 4) that the employer either

9

> ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications."

Id. (quoting Fowle v. C & C Cola, 868 F.2d 59, 61 (3d Cir. 1989)). With respect to the last requirement for a prima facie case, the United States Court of Appeals for the Third Circuit requires that an employee show that the failure to promote occurred "under circumstances which give rise to an inference of unlawful discrimination." Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 357 (3d Cir. 1999). This case involves a noncompetitive promotion situation in which the question whether the position was filled by a sufficiently younger person is not relevant. The last requirement in that context necessitates a focus on whether there were circumstances in this case that give "rise to an inference of unlawful discrimination." Id.

Defendant focused his argument in favor of summary judgment on the fourth requirement for a prima facie case, asserting that plaintiff failed to show that she was not promoted under circumstances that give rise to an inference of discrimination. Plaintiff contends that three similarly situated individuals – Shelly Divers, Nancy Culley and Bonnie Warren (Raybuck) – were promoted in previous years and they were similarly situated to her which she argues gives rise to an inference of discrimination. The promotions of these three individuals are the only evidence plaintiff offered to support an inference of discrimination. Defendant argues the three individuals were not similarly situated to plaintiff and that plaintiff cannot establish that any similarly situated individuals substantially younger than plaintiff were favored in the promotion process.

Since the only evidence which plaintiff adduced, with respect to an inference of discrimination for her failure to promote claim, concerns the three individuals identified by

plaintiff as being promoted from Nurse II to Nurse III in 2001 and 2002 the question to be resolved by this court is whether as a matter of law those individuals were not similarly situated to plaintiff.  This court concludes that they, as a matter of law, were not similarly situated to plaintiff.  Their promotions cannot be used to support the existence of circumstances which give rise to an inference of discrimination.  Of importance to this determination is that the individuals plaintiff identified were promoted in years prior to the year in which plaintiff was considered for promotion and were promoted by a different supervisor.  A different independent decision maker is sufficient to differentiate between two otherwise similarly situated employees.  See Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir 2000) (cited in Goins v. Echostar Communications Corp., 148 Fed Appx. 96, 98 (3d Cir. 2005)).

By reason of the nurses Shelly Divers, Nancy Culley and Bonnie Warren (Raybuck) being not similarly situated and  plaintiff not identifying any other individuals who were similarly situated to her, plaintiff failed to adduce sufficient evidence from which a reasonable factfinder could render a verdict in her favor on this claim.  Plaintiff cannot establish the fourth element of her prima facie case.

No other nurses, including nurses younger and older than plaintiff, were promoted in 2003 – the year in which plaintiff's promotion was denied.  Plaintiff can point to no individuals who were similarly situated and were more favorably treated.  Outside of the three individuals plaintiff relied upon and that this court found not similarly situated as a matter of law, plaintiff offered no evidence upon which the court could find an inference of discrimination.  By reason of plaintiff's failure to adduce sufficient evidence to support her prima facie case, defendant's

motion for summary judgment with respect to plaintiff's claim under the ADEA for failure to promote is granted.

## II. Sovereign immunity – retaliation claims under ADEA section 633a

Plaintiff's remaining three claims are all retaliation claims. She alleges that in retaliation for her protected EEO actions defendant (1) did not transfer plaintiff to outpatient care, (2) created a hostile work environment and (3) constructively discharged her when the conditions became so intolerable that she had to quit. In the motion for summary judgment, defendant argues that this court lacks jurisdiction over the retaliation claims under the ADEA because Congress did not waive sovereign immunity over those claims. This issue has not yet been addressed by the United States Court of Appeals for the Third Circuit.

Congress enacted the ADEA in 1967 to protect individuals from age discrimination in employment. Patrick v. Chertoff, No. 3-01-CV-0152-P, 2005 U.S. Dist. LEXIS 15193, at *6 (N.D. Tex. July 27, 2005). Originally, the ADEA applied only to private entities. Id. Congress explicitly provided that private employers could be subject to age discrimination and retaliation claims. 29 U.S.C. § 623(a), (d). In 1974, Congress expanded the ADEA to include state and local governments and federal employers. 29 U.S.C. § 633a; Forman v. Small, 271 F.3d 285, 296 (D.C. Cir. 2001). Section 633a provides that "[a]ll personnel actions affecting [federal agency] employees . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a) (emphasis added). In doing so, Congress clearly waived sovereign immunity with respect to age discrimination claims, i.e., "any discrimination based on age." Id. It, however, is not clear whether Congress waived sovereign immunity with respect to retaliation claims. On the one hand, it may be argued that section 633a does not explicitly mention the word "retaliation" or

describe retaliatory conduct such as an individual opposing any unlawful practices, making a charge, etc. On the other hand, it may be argued that the language "any discrimination" implicates retaliation claims. The United States Court of Appeals for the District of Columbia noted in <u>Forman</u>, that it would seem absurd that if Congress intended to protect "employees from any discrimination" it would not include retaliation claims. <u>Forman</u>, 271 F.3d at 297.[1]

Although the Supreme Court has not addressed this particular issue, it issued clear guidelines for courts to follow when determining whether Congress has waived sovereign immunity: Congress will not be held to have waived sovereign immunity unless it explicitly does so; it cannot be implied. <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980). "In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign, . . . and not enlarge the waiver beyond what the language requires. . . ." <u>Library of Congress v. Shaw</u>, 478 U.S. 310, 318 (1986) (citations omitted)(internal quotation marks omitted). The United States cannot be held to have consented

---

[1] In <u>Patrick v. Chertoff</u>, 2005 U.S. Dist. LEXIS 15193, at *11-12 (N.D. Tex. July 27, 2005), the district court viewed that argument as not compelling by reason of Congress authorizing remedies for federal employees for retaliation relating to any age discrimination complaint in the Civil Service Reform Act, 5 U.S.C. § 2302(b)(9), which provides in relevant part:

> **(b)** Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority–
>   . . . .
>     **(9)** take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of–
>         **(A)** the exercise of any appeal, complaint, or grievance right granted by any law, rule or regulation;
>         **(B)** testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A); . . . .

to suit and hence waived its sovereign immunity unless a waiver of sovereign immunity is "'unequivocally expressed.'" Mitchell, 445 U.S. at 538 (quoting United States v. King, 395 U.S. 1, 4 (1969)). A waiver of sovereign immunity may not be implied; nor can "[a] statute's legislative history ... supply a waiver that does not appear clearly in any statutory text." Lane v. Pena, 518 U.S. 187, 192 (1996). In the event of waiver, the scope of the waiver must be "strictly construed . . . in favor of the sovereign." Id.

Applying these guidelines, this court is compelled to hold that Congress did not waive sovereign immunity with respect to retaliation claims under the ADEA. At no point in section 633a did Congress explicitly address retaliation claims. While Congress may have intended the phrase "any discrimination" to include retaliation claims, this court is not permitted to infer a waiver based on the breadth of the statutory language or speculations about congressional intent. See Cyr v. Perry, 301 F. Supp. 2d 527, 534 (E.D. VA. 2004). Inferences and speculation have no place in federal sovereign immunity law. Id. The court is only permitted to look to express or unequivocal statutory language. Lane, 518 U.S. at 192. Given these restrictions, this court concludes that Congress did not waive sovereign immunity with respect to retaliation claims under section 633a of the ADEA.

This conclusion was also reached by several other district courts. See Whitman v. Mineta, 382 F. Supp. 2d 1130 (D. Alaska 2005); Patrick v. Chertoff, No. 3-01-CV-0152-P, 2005 U.S. Dist. LEXIS 15193, at *12-13 (N.D. Tex. July 27, 2005); Cyr v. Perry, 301 F. Supp. 2d 527 (E.D. Va. 2004). The district courts in Whitman, Patrick and Cyr recognized that the phrase "any discrimination" contained in section 633a was interpreted broadly by the court of appeals in Forman. The district courts, however, found no reasonable ground to conclude that a claim for

14

retaliation is subsumed by language relating to discrimination. See Cyr, 301 F. Supp. 2d at 534. Age discrimination and retaliation claims require different elements of proof. Id. Congress was aware of the difference in those claims because it expressly permitted ADEA retaliation claims against non-federal employees in section 623d.[2] Id. The provisions of section 623(d), however, do not apply to federal agencies by reason of the express limitations of section 633a(f): "Any personnel action of any [federal agency] . . . <u>shall not be subject to, or affected by, any provision of this chapter</u>, other than the provisions of section 631(b)[3] of this title and the provisions of this section [633a]." 29 U.S.C. § 633a(f) (emphasis added).

Plaintiff's argument is based solely upon the reasoning of the court of appeals in Forman. The court of appeals in Forman reasoned that it is only sensible to conclude that Congress intended that section 633a prohibit retaliation because "it is difficult to imagine how a workplace could be 'free from any discrimination based on age' if, in response to an age discrimination claim, a federal employer could fire or take other action that was adverse to an employee" and because the plain language of section 633a does not suggest that Congress intended to provide fewer protections for age discrimination by federal entities than for private entities. Forman, 271 F.3d at 297. The court in Forman described its focus as being "on the sweeping language used

---

[2]Section 623(d) provides:
   It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual, . . . has opposed any practice made unlawful by this section, or because such individual, . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.
29 U.S.C. §623(d).

[3]28 U.S.C. § 631(b) limits the protection set forth in section 633a "to individuals who are at least 40 years of age."

by Congress," i.e., the phrase "free from any discrimination." Id. (emphasis added). The court in Forman also referred to previous decisions in the Title VII context which found in Title VII a waiver of sovereign immunity for retaliation claims. Id. The court of appeals recognized that Title VII does not contain a provision analogous to section 633a(f) – the provision of the ADEA that precluded section 623(d) (retaliation claims) from being applicable to federal employees. Id. at 298. The court of appeals found the "sweeping language" of section 633a was sufficient to support its conclusions. Id. This court, however, cannot reconcile the Supreme Court's admonition that the scope of a statutory provision must be strictly construed in favor of sovereign immunity, Lane, 518 U.S. at 192, with the court of appeals' reliance in Forman on "sweeping language." Forman, 271 F.3d at 298. If the scope of the waiver has to be strictly construed, the language in issue cannot be broadly interpreted. It appears to this court that the court of appeals in Forman recognized an implied waiver of sovereign immunity. See Cyr, 301 F.Supp. 2d at 533. This court, however, is not permitted to find an implied waiver of sovereign immunity. Mitchell, 445 U.S. at 538.

By reason of 1) section 633a of the ADEA not explicitly permitting retaliation claims, 2) retaliation and age discrimination claims being distinct claims with different elements of proof and 3) Congress expressly permitting retaliation claims in other parts of the statute, this court strictly construes section 633a and holds that Congress in section 633a did not waive sovereign immunity from retaliation claims. This court lacks jurisdiction over plaintiff's retaliation claims and the motion for summary judgment must be granted in favor of defendant with respect to plaintiff's retaliation claims.

*Conclusion*

After reviewing the undisputed material facts of record and any disputed facts of record taken in the light most favorable to the nonmoving party and strictly construing the language of section 633a with respect to the scope of any waiver of sovereign immunity by Congress, the court determines that defendants' motion for summary judgment shall be granted with respect to plaintiff's failure to promote claim and with respect to plaintiff's retaliations claims.

*Order*

**AND NOW**, this 25th day of October 2006, upon consideration of the parties' arguments and supporting documents

**IT IS ORDERED** that defendant's motion for summary judgment (Doc. No. 26) is **GRANTED.**

The clerk shall mark this case closed.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:   Counsel of record